# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Richard Friedman,

    Plaintiff

v.

The Bank of Jackson Hole, et al.,

    Defendants

Case No.: 2:19-cv-01054-JAD-DJA

**Order Dismissing Claims and Closing Case**

[ECF Nos. 79, 81, 83, 85, 86, 104]

    Pro se plaintiff Richard Friedman alleges that he has been assigned all of the "beneficial interests, title[,] and rights" that nonparties Robert Lane and Christopher Lane held as beneficiaries of an irrevocable trust called The Boulder Investment Trust.[1] He contends that the trust's property was wrongfully used to satisfy creditors in Robert's Chapter 7 bankruptcy case so, in his capacity as the trust's beneficiaries' assignee, Friedman sues the many entities and individuals whom he believes are responsible for that loss. With his first-amended complaint, Friedman alleges 12 claims that sound in fraud, negligence, conspiracy, tortious interference with contracts, embezzlement, failure to supervise, and breach of fiduciary duty.[2]

    Defendants move to dismiss all of Friedman's claims, arguing that (1) this court lacks subject-matter jurisdiction on three separate grounds including diversity, (2) most of the defendants are not subject to personal jurisdiction in Nevada, (3) Friedman's claims are barred by the applicable statutes of limitation and the doctrines of issue and claim preclusion, and (4) Friedman alleges claims as an assignee that are not assignable under Nevada law.[3] Friedman

---

[1] ECF No. 77 at 7–8 (first-amended complaint).
[2] *Id.* at 27–45.
[3] ECF No. 79 (defendants' motion to dismiss).

moves to strike part of defendants' dismissal motion and their reply in support of it, arguing that both briefs contain irrelevant and false statements and that the reply asserts three new arguments.[4] Friedman also moves to dismiss the diversity-destroying defendant, arguing that it is dispensable to his claims in this case.[5]

I deny Friedman's motion to strike because it is without merit. Defendants consent to granting Friedman's motion to dismiss the non-diverse defendant,[6] so I grant that motion. But Friedman does not similarly prevail on defendants' dismissal motion. He fails to demonstrate that most of the defendants are subject to personal jurisdiction in Nevada, and that this court has subject-matter jurisdiction under the *Barton* doctrine over his claims against the one defendant who is subject to personal jurisdiction here. I therefore grant defendants' dismissal motion in part and dismiss all of Friedman's claims on jurisdictional grounds. Because the jurisdictional defects cannot be cured by amendment, I deny as moot all other pending motions and direct the Clerk of Court to close this case.

**I.     Motions to Dismiss [ECF Nos. 79, 86]**

Defendants offer numerous reasons why I must dismiss all of Friedman's claims. I consider only three of defendants' arguments because they are meritorious and resolve all of the claims in this case: (1) subject-matter jurisdiction does not exist because diversity is not complete, (2) most of the defendants are not subject to personal jurisdiction in Nevada, and (3) subject-matter jurisdiction does not exist over Friedman's claims against the bankruptcy trustee and the trustee's attorneys under *Barton* doctrine.[7] Because I resolve this case on these

---

[4] ECF No. 104 (motion to strike).

[5] ECF No. 86 (Friedman's motion to dismiss).

[6] ECF No. 87 (defendants' response to Friedman's dismissal motion).

[7] ECF No. 79.

jurisdictional grounds, I need not and do not reach defendants' other dismissal arguments. I begin with the parties' arguments about diversity.

### A.   *The lack of complete diversity is cured by dismissing Lindquist & Vennum.*

Friedman alleges that federal-question jurisdiction exists here,[8] but none of his claims arises "under the Constitution, laws, or treaties of the United States."[9]  The closest that Friedman comes to stating a federal question is his allegation that the bankruptcy trustee and his attorneys "commit[ted] embezzlement under 11 USC Section 153" by inflating costs and not objecting to false and fraudulent claims.[10]  But there is no such statute and, as discussed in subsection C, subject-matter jurisdiction does not exist here over claims against the bankruptcy trustee and his attorneys by operation of the *Barton* doctrine.  Thus, federal-question jurisdiction does not exist in this case.

Friedman also contends that diversity jurisdiction exists over his claims.  The parties must be completely diverse for diversity jurisdiction to apply here.[11]  Defendants argue that the parties here are not completely diverse.  Friedman alleges that he is a citizen of Nevada.[12] Defendants argue that defendant law firm Lindquist & Vennum, LLP merged into Ballard Spahr, LLP before Friedman filed his original complaint in this action, and Ballard Spahr is a citizen of Nevada because several of its partners are Nevada citizens.[13]  Friedman does not dispute these facts and he moves to dismiss his claims against the law firm, which he argues is a dispensable

---

[8] ECF No. 77 at 9, ¶ 16.
[9] 28 U.S.C. § 1331.
[10] ECF No. 77 at 41, ¶ 219.
[11] 28 U.S.C. § 1332(a)(1).
[12] ECF No. 77 at 8, ¶ 1.
[13] *Compare* ECF No. 79 at 15, *with* ECF No. 86 at 1–2.

party.[14] The law firm consents to granting Friedman's dismissal motion and no party opposes that solution.[15] I therefore grant Friedman's motion and dismiss his claims against Lindquist & Vennum.

### B. *O'Malley is the only defendant subject to personal jurisdiction in Nevada.*

Defendants provide both argument and evidence to show that none of them, except for Dennis O'Malley,[16] is subject to general jurisdiction in Nevada.[17] "General jurisdiction over a defendant allows a plaintiff to assert claims against that defendant [that are] unrelated to the forum."[18] "Such broad jurisdiction is available only in limited circumstances."[19] "'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'"[20] As defendants summarize, "[n]one lives or works in Nevada, none has offices or staff in Nevada, none is registered to do business in Nevada, and none pays taxes in Nevada."[21] Defendants argue that

---

[14] ECF No. 86.

[15] ECF No. 87.

[16] Defendants acknowledge in a footnote that O'Malley is subject to personal jurisdiction in Nevada. ECF No. 79 at n.19.

[17] Defendants also argue that they are not subject to specific jurisdiction in Nevada, ECF No. 79 at 19, but Friedman "only addresses general jurisdiction" in his response and thus concedes that point to defendants. ECF No. 95 at 21; *see* L.R. 7-2(d) (providing that the failure to file points and authorities in response to any motion "constitutes a consent to the granting of the motion").

[18] *Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1157 (Nev. 2014).

[19] *Id.*

[20] *Id.* (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)).

[21] ECF No. 79 at 19.

4

there is simply no basis for the court to conclude that any of them has the requisite continuous and systematic contacts to be "essentially 'at home' in this [S]tate."[22]

Friedman does not dispute defendants' argument and evidence, except to argue that the Bank of Jackson Hole is subject to general jurisdiction in Nevada because its contacts with this forum are so continuous and systematic that it is essentially at home here.[23] He identifies three contacts that he believes the bank has with Nevada: (1) participating in the PLUS system of automated teller machines (ATMs), some of which are located in Nevada; (2) having customers who are Nevada citizens; and (3) paying credit charges that its customers incur with Nevada vendors.[24]

The first and third contacts get Friedman nowhere: the bank responds with evidence that it does not own, lease, or sponsor any ATM in Nevada and that it performs all of its services in Wyoming, including processing payments for its customers.[25] What remains is Friedman's belief that the bank has customers who are citizens of Nevada, but even if that's true, having customers who are citizens of a state is not sufficient to confer general jurisdiction in that forum. The Supreme Court has, in fact, repeatedly explained that "the defendant-focused 'minimum contacts' inquiry" cannot be satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State."[26] Friedman has failed to show that personal jurisdiction exists in Nevada over any defendant except O'Malley.

---

[22] *Id.* (quoting *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1115–16 (D. Nev. 2013)).
[23] ECF No. 95 at 21–24.
[24] *Id.* at 22.
[25] ECF No. 102-1 (declaration of David Perino, an executive vice president of the bank).
[26] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

### C. *This court lacks subject-matter jurisdiction over the claim against O'Malley.*

Defendants argue that this court lacks subject-matter jurisdiction over Friedman's claim against O'Malley under the *Barton* doctrine. The doctrine finds its origins in the U.S. Supreme Court's *Barton v. Barbour*[27] decision and provides "that a party must first obtain leave of the bankruptcy court before [he] initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity."[28] The doctrine applies "'even after the bankruptcy case has been closed and the assets are no longer in the trustee's hands.'"[29] And the doctrine extends to the bankruptcy trustee's court-approved counsel.[30]

The bankruptcy court authorized Gary Barney, the Chapter 7 trustee in Robert's bankruptcy case, to employ the law firm of Lindquist & Vennum to represent him in that case.[31] Friedman alleges that O'Malley was the managing partner of Lindquist & Vennum during the time that firm represented Barney in Robert's bankruptcy case.[32] He alleges a single claim against O'Malley, contending that O'Malley failed to supervise the law firm's attorneys who

---

[27] *Barton v. Barbour*, 104 U.S. 126 (1881).

[28] *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005).

[29] *Id.* at 972 (quoting *Muratore v. Darr*, 375 F.3d 140, 1 (1st Cir. 2004)).

[30] *Yagman v. Kittay*, 715 Fed. Appx. 770 (9th Cir. 2018) (unpublished); *c.f. In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1094–95 (9th Cir. 2016) (extending the *Barton* doctrine to members of unsecured creditors' committee); *see In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (holding "as a matter of law" that "counsel for the trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, [whereas] here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets").

[31] *In re Robert M. Lane*, No. 11-20398, at ECF No. 43 (Bankr. D. Wy. Sept. 26, 2011).

[32] ECF No. 77 at ¶ 116.

represented Barney in Robert's bankruptcy case.[33] That failure, Friedman continues, resulted in the trustee not objecting to the Bank of Jackson Hole's claim in Robert's bankruptcy case and the law firm reaping millions in attorney's fees as a result.[34] There is no evidence that Friedman obtained leave of the bankruptcy court in Wyoming before he sued O'Malley in this case.

Friedman argues in response that the *Barton* doctrine does not apply here for two reasons. He first contends that the doctrine "is limited to acts taken within the scope of the court officer's authority with notice to the debtor and disclosure to and approv[al] [of] the bankruptcy court."[35] But Friedman provides no citation for this requirement. The court is not aware of any authority stating that the debtor must have had notice in the bankruptcy case of the acts being complained about in a different forum for the *Barton* doctrine to apply. Friedman's first argument fails because it is unsupported.

Friedman next argues that the *Barton* doctrine does not apply because the acts that he complains about were performed in managing and operating the debtor's businesses. Friedman correctly points out that the *Barton* doctrine does not apply "where the acts complained of involve the trustee's conducting the debtor's business in the ordinary course or his pursuing that business as an operating enterprise . . . ."[36] But Friedman's failure-to-supervise claim against O'Malley doesn't allege acts that the bankruptcy trustee committed while operating the debtor's business in the ordinary course. As Friedman himself explains in his response, his claim is

---

[33] *Id.* at ¶¶ 226–232 (Count 11, alleging failure to supervise attorneys and employees).

[34] *Id.* at ¶¶ 214–17 (Count 10, alleging that the law firm, bankruptcy trustee, and trustee's lead counsel embezzled the bankruptcy estate's assets by not objecting to the bank's claim).

[35] ECF No. 95 at 15 (bolded and italic emphasis omitted).

[36] *Id.* at 16–17 (quoting *In re Crown Vantage, Inc.*, 421 F.3d at 971–92); *accord* 28 U.S.C. § 959(a) (authorizing trustees of any property to be sued without leave of the court appointing them "with respect to any of their acts or transactions in carrying on business connected with such property").

7

premised on the facts that the trustee, as the court-appointed manager of three limited-liability companies, "liquidated" the assets of those companies "as part of the fraudulent claim . . . ."[37] Put more clearly, the trustee liquidated the estate's assets to pay a creditor's claim. The Ninth Circuit explained in *In re Crown Vantage, Inc.* that "[t]his is precisely the type of activity that the *Barton* doctrine was designed to protect."[38]

Friedman contends that the trustee should have objected to the bank's claim and that the liquidated assets— the LLCs' and trust's properties—should not have been considered part of Robert's bankruptcy estate. Neither point, however, converts the nature of the trustee's alleged conduct into acts that he did in the ordinary course of operating the debtor's business. Friedman has therefore failed to demonstrate that an exception to the *Barton* doctrine applies on these facts. Because Friedman failed to obtain leave of the bankruptcy court to sue O'Malley in this forum, the *Barton* doctrine deprives this court of subject-matter jurisdiction over Friedman's claim against O'Malley.

The upshot of my decisions on the parties' dismissal arguments is that Friedman's claims against all defendants are dismissed either on Friedman's unopposed motion (Lindquist & Vennum now Ballard Spahr), because Nevada cannot exercise personal jurisdiction over the defendant (the Bank of Jackson Hole, Gary Barney, the Estate of Robert Biolchini, Charles Hingle, Colleen Lane, Patricia Lane, David Perino, John Smiley, and Pete Lawton), or because subject-matter jurisdiction is lacking under the *Barton* doctrine (O'Malley). Because these deficiencies cannot be cure by amendment, I dismiss Friedman's claims without leave to amend.

---

[37] ECF No. 95 at 17, 18.

[38] *In re Crown Vantage, Inc.*, 421 F.3d at 972.

**II.     Friedman's Motion to Strike [ECF No. 104]**

Friedman moves to strike parts of defendants' dismissal motion and their reply in support of that motion, arguing that their statements about Robert's bankruptcy case are irrelevant and false and that the reply raises three new arguments.[39] Friedman's motion to strike fails on all grounds. First, the background information that defendants provide, including what occurred in Robert's bankruptcy case and the cases that followed, is material and relevant to the claims, defenses, and arguments in this case. It is relevant despite the fact that Friedman abandoned—in his response to defendants' dismissal motion no less—all claims that he had brought in his capacity as assignee of Robert's interest in the trust.[40] Second, the statements that Friedman identifies as "false" are simply the facts and reasonable inferences as defendants see them. Defendants are entitled to present their version of the facts. Finally, the arguments that Friedman contends are new to defendants' reply brief merely continue arguments that defendants made in their motion or are valid replies to the arguments that Friedman made in his response. I therefore deny Friedman's motion to strike in its entirety.

**III.    All other pending motions are moot [ECF Nos. 81, 83, 85].**

After resolving the parties' dismissal motions, what remains are (1) defendants' motion to stay this case pending a determination on their dismissal motion[41] and Friedman's motions for (2) partial summary judgment[42] and (3) the court to reconsider its order approving attorney

---

[39] ECF No. 104.

[40] ECF No. 95 at 10–14 (Friedman concedes that defendants' argument that Robert—and Friedman as his assignee—lacks standing is a "solid" one and then argues that he recently assigned Robert's interest back to Robert anyway, so he's now focusing only on the interests that Christopher assigned to him).

[41] ECF No. 81.

[42] ECF No. 83.

9

Michael Gilbert's pro hac vice application.[43]  Because I have dismissed all of Friedman's claims against defendants on jurisdictional grounds, and the jurisdictional deficiencies cannot be cured by amendment, the remaining motions are moot and I deny them for this reason.

## Conclusion

IT IS THEREFORE ORDERED that Friedman's motion to dismiss defendant Lindquist & Vennum, LLP **[ECF No. 86] is GRANTED** and defendants' motion to dismiss **[ECF No. 79] is GRANTED in part**.  Friedman's claims against all defendants are DISMISSED without leave to amend.

IT IS FURTHER ORDERED that Friedman's motion to strike **[ECF No. 104] is DENIED**.

IT IS FURTHER ORDERED that defendants' motion to stay **[ECF No. 81]** and Friedman's motions for partial summary judgment **[ECF No. 83]** and for the court to reconsider its order approving a pro hac vice application **[ECF No. 85] are DENIED as moot**.

The Clerk of Court is directed to CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: August 11, 2020

---

[43] ECF No. 85.